UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD ARNOLD,

                              Plaintiff,

v.                                                    5:15-CV-00010
                                                      (GLS/TWD)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

LACHMAN & GORTON                      PETER A. GORTON, ESQ.
*Counsel for Plaintiff*
1500 E. Main Street
P.O. Box 89
Endicott, NY 13761-0089


HON. RICHARD S. HARTUNIAN             SERGEI ADEN, ESQ.
United States Attorney for the        Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207


OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278



THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **REPORT AND RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Honorable

Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is 45 years old, with a birth date of September 21, 1970. (Administrative Transcript at 281, 289.[1]) He has a GED. (T. at 38.) In the past, he has worked as a forklift operator, block cuber, injection mold machinist, construction worker, and store laborer. (T. at 84.) Plaintiff alleges disability due to traumatic brain injury ("TBI"), memory and speech problems, severe headaches, and depression. (T. at 38, 46-47, 49, 340.)

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI") on February 14, 2011. (T. at 281-295.) The application was initially denied on April 15, 2011, and then denied upon reconsideration on September 9, 2011. (T. at 160, 165.) On October 11, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 181.) The initial hearing was held on December 4, 2012, and a supplemental hearing was held on May 7, 2013. (T. at 34, 69.) On July 19, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 15.) On July 23, 2013, the claimant filed a request for review with the Appeals Council. (T. at 8.) The ALJ's decision became the final decision of the Commissioner when the

---

[1]     The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Appeals Council denied Plaintiff's request for review on December 6, 2014. (T. at 1.) Plaintiff

timely commenced this action on January 5, 2015. (Dkt. No. 1.)

## II. APPLICABLE LAW

### A. Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI benefits

must establish that he or she is "unable to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2013). Under that five-

step sequential evaluation process, the decision-maker determines:

---

[2]

While the SSI program has special economic eligibility requirements, the
requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and
Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance), are identical, so that
"decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and
Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[3] *see Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be 'more than a mere scintilla' of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the

---

[3]
     On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Commissioner of Social Security*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

record contains substantial support for the ALJ's decision.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

The ALJ found that the claimant met the disability insured status requirements of the Social Security Act through June 30, 2012, and that the claimant had not engaged in substantial gainful activity since March 5, 2010, the alleged onset date of disability.  (T. at 16.)  The ALJ determined that the claimant had the following "severe" impairments: TBI with memory and speech problems, post-traumatic headaches, and depression with post-traumatic stress disorder ("PTSD") (after March 2013).  *Id.*  However, the claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (T. at 18.)  The ALJ determined that claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels; that he was limited to unskilled work that is routine; that he was limited to frequent contact with co-workers and supervisors, and occasional contact with the general public; and that he should avoid workplace hazards.  (T. at 20.)  The ALJ found that the claimant had no past relevant work within the RFC.  (T. at 23.)  Considering claimant's age, education, work experience, and RFC, the ALJ determined that the claimant was not disabled as jobs exist in significant numbers in the national economy that he can perform.  *Id.*

## IV.    THE PARTIES' CONTENTIONS

Plaintiff argues that the ALJ erred in evaluating Plaintiff's RFC.  (Dkt. No. 13 at 14-19.[4]) Additionally, Plaintiff asserts that the Commissioner did not sustain her burden of proving that

---

[4]

Page numbers in citations to the parties' briefs refer to the page number assigned by the Court's CM/ECF electronic filing system.

there are a significant number of jobs in the national economy Plaintiff could perform within his RFC. *Id.* at 12-14.

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed. (Dkt. No. 14.)

## V. DISCUSSION

Plaintiff initially argues, assuming the RFC determination was correct, that the Commissioner's analysis at step five was flawed because she did not prove there were a significant number of jobs in the national economy which Plaintiff could do given the RFC finding. (Dkt. No. 13 at 12.) Plaintiff then turns to the RFC determination, asserting that the ALJ failed to consider the impact of Plaintiff's headaches on his ability to do substantial gainful activity. *Id.* at 14. The Court will address the ALJ's determination of Plaintiff's RFC first.

### A. The RFC Determination

A claimant's RFC is the most the individual can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. 404.1546(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations,

the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* at § 404.1545(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(a), 404.1569a(b), and 416.969a(a). Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*.

"The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat,* 717 F. Supp. 2d at 267 (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

## B.    Credibility Evidence

Part and parcel to the RFC determination is the ALJ's review of the credibility of Plaintiff and the ALJ's review of the medical opinion evidence. The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs*., 728 F.2d 588, 591

(2d Cir. 1984) (citation and internal punctuation omitted).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529; *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *see* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996).  The ALJ is required to consider all of the evidence of record in making the credibility assessment.  *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms."  SSR 96-7p, 1996 WL 374186, at *2.  This finding "does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms."  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  *Id.*  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*  Here, the ALJ determined that Plaintiff's medically determined impairment could reasonably be expected to cause the symptoms alleged by Plaintiff.  (T. at 21.)

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "'consider the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence.'" *Genier,* 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to

establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").  This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  SSR 96-7p, 1996 WL 374186, at *2.

The ALJ must consider all evidence of record, including statements the claimant or others make about his or her impairments, restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings.  *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)).  A claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone."  SSR 96-7p, 1996 WL 374186, at *3.  However, when the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§

404.1529(c)(3)(I)-(vii); 416.929(c)(3)(I)-(vii).

Here, Plaintiff argues that the ALJ erroneously failed to consider how Plaintiff's headache condition would affect Plaintiff's ability to stay on task and perform sustained work activities. (Dkt. No. 13 at 15.) He argues the ALJ failed to acknowledge that Plaintiff would be off task due to the headache condition, and give any rationale for determining what period of time Plaintiff would be off task. *Id.* With regard to the headache complaints and how they affected Plaintiff's ability to work, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effect of those symptoms not fully credible. (T. at 21.) Here, the ALJ properly reviewed the symptom-related factors, and discussed a variety of those factors in view of other evidence in the record such that the Court finds the credibility determination is supported by substantial evidence. (T. at 21-22.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, 96 Civ. 9435 (JSR)(SEG), 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15-16 (S.D.N.Y. Mar. 25, 1999) (citations omitted)). "A finding that [a claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony "undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not" disabled). "Further, whatever findings the ALJ makes must be

consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

In making the credibility determination here, the ALJ reviewed Plaintiff's activities of daily living, the exam findings of the medical professionals, the medications he took and their effectiveness, and the treatment Plaintiff received. (T. at 21.) In March of 2011, Plaintiff reported that he had no problem with personal care such as dressing, bathing, and feeding himself, and that he prepared his own meals on a daily basis. (T. at 359-60.) In May of 2013, he reported that he could "complete all aspects of daily living including dressing himself, doing laundry once a week, shopping twice a month, and cleaning and cooking once to two times a week." (T. at 583.) An ALJ can properly consider that the claimant's varied activities in determining that allegations of disabling limitations are not fully credible. *Poupore*, 566 F.3d at 307.

Undermining Plaintiff's claims that his headaches were disabling to extent where he was unable to work, he acknowledged that between approximately 2010 and 2012 he did not seek any treatment for headaches and was actually looking for work. (T. at 48-49.) Thereafter, Plaintiff treated with neurologist Aamir Rasheed, M.D., on September 24, 2012, February 22, 2013, and April 19, 2013. (T. at 535, 551, 552.) The neurologic exams performed by Dr. Rasheed and another provider in his office were normal. *Id.* On September 24, 2012, Dr. Rasheed diagnosed post-traumatic headaches and prescribed Depakote[5] and on February 22, 2013, Dr. Rasheed

---

[5]

Depakote (Divalproex) is used to treat manic episodes associated with bipolar disorder, as well as certain types of seizues and migraines. *See* http://www.pdrhealth.com/drugs/depakote (last visited Feb. 1, 2016).

prescribed Botox[6] treatments. (T. at 536, 551.) Plaintiff reported on April 19, 2013, that the medications did not provide any relief, therefore the provider in Dr. Rasheed's office suggested to Plaintiff that "the [Botox] dose may need to be adjusted and to not discount this remedy and that [Plaintiff] may need two or three treatments before the treatment is effective." (T. at 553.) Yet Plaintiff apparently did not receive any more treatment from Dr. Rasheed as the record is devoid of any further treatment notes of Dr. Rasheed or from anyone in his office.

The ALJ noted that Plaintiff's failure to follow up with further specialized treatment for his TBI and Plaintiff's failure to engage in any psychological rehabilitation efforts until a short time before the hearing also detracted from his credibility regarding the seriousness of his symptoms. (T. at 21.) Additionally, treatment notes from Uzma Anis, M.D., show Plaintiff was evaluated in late 2012 for his complaints of dizziness, and vestibular rehabilitation was recommended. (T. at 567, 570.) However, Dr. Anis also noted Plaintiff was "noncompliant with follow up medical care." (T. at 567.) The ALJ properly considered Plaintiff's failure to comply with medication and other treatment as prescribed as a factor weighing against his credibility, particularly because he had counsel from his treatment providers to maintain the medication regimen and follow up with medical care recommended. (T. at 553, 568.)

In this case, the ALJ correctly found that Plaintiff's allegations of disabling symptomatology were not credible to the degree alleged. (T. at 21.) The ALJ determines issues of credibility, and deference should be given to his judgment because he heard Plaintiff's testimony and observed his demeanor. *See Garrison v. Comm'r of Social Sec.*, No. 08-CV-1005,

---

[6]

     Botox is used to prevent headaches in people with chronic migraine headaches, among other things. *See* http://www.pdrhealth.com/drugs/botox (last visited Feb. 1, 2016).

2010 WL 2776978, at *5-7, 2010 U.S. Dist. LEXIS 70411 (N.D.N.Y. July 14, 2010).  Based

upon the above, the ALJ did not err in his assessment of Plaintiff's credibility.  The ALJ properly

set forth his reasons for finding Plaintiff's claims inconsistent with regard to the intensity,

persistence, and limiting effects of his symptoms.  Therefore, the Court finds that the credibility

determination is based upon proper legal principles and is supported by substantial evidence.

### C. Opinion Evidence

Plaintiff argues that the ALJ erred in failing to consider and give greater weight to the

medical opinion provided by treating neurologist Dr. Rasheed who opined that Plaintiff "would

be off task 10% of the time if he attempted even simple work."  (T. at 581.)  As such, Plaintiff

asserts the RFC was not properly supported by substantial evidence and was the product of legal

error.  (Dkt. No. 13 at 15-18.)  The Commissioner argues that the ALJ properly evaluated all of

the medical evidence including the opinions of treating providers.  (Dkt. No. 14 at 7-14.)  As

discussed in more detail below, the Court agrees with the Commissioner and finds that the ALJ's

assignment of "no weight" to the opinion of Dr. Rasheed regarding Plaintiff being "off task 10%

of the time" was proper because the opinion is not consistent with Dr. Rasheed's records, and the

medical evidence overall.  As required, the ALJ gave "good reasons" for not assigning weight to

Dr. Rasheed's opinion.

### 1. Treating Physician Rule

The medical opinions of a claimant's treating physician are generally given more weight

than those of other medical professionals.  "If . . . a treating source's opinion . . . is well-

supported by medically acceptable clinical and laboratory techniques and is not inconsistent with

other substantial evidence . . . [it] will [be] give[n] controlling weight."  20 C.F.R.

§ 404.1527(c)(2).  Medically acceptable techniques include consideration of a patient's report of complaints and the patient's history as essential diagnostic tools.  *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003).  Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinions.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(I)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion.  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

An ALJ who refuses to give "controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted).  This analysis must be conducted to determine what weight to afford any medical opinion.  20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received.  *Id.*; *see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the treating physician rule when he discounted a report because it was incomplete and unsigned). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  *Id.* at

§ 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and the opinions are contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell*, 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

2.     Aamir Rasheed, M.D.

According to the records submitted on this claim, Plaintiff was treated at Dr. Rasheed's office for only three visits between September 24, 2012, and April 19, 2013. (T. at 535, 551, 552.) As noted, Dr. Rasheed then provided a medical source statement dated May 14, 2013, indicating Plaintiff would be "off task 10% of the time." (T. at 581.) On September 24, 2012,

Plaintiff's physical exam was essentially normal with the exception that he stuttered "at times." (T. at 535-36.) Based upon Plaintiff's history and complaints of headaches, Dr. Rasheed diagnosed "posttraumatic headache with migraine features" with "a superimposed chronic daily headache component likely related to analgesic overuse." (T. at 536.) He prescribed Depakote and indicated that "headache improvement will take a while and [Plaintiff] needs to be patient with the treatment regimen." *Id.*

From the encounter note, it does not appear that a physical exam was performed by Dr. Rasheed on February 22, 2013. (*See* T. at 551.) However, he treated Plaintiff with Botox injections because Plaintiff's headache complaints had not improved. *Id.* On April 19, 2013, Plaintiff was seen again by another provider in Dr. Rasheed's office. (T. at 552-53.) Plaintiff continued to complain of headaches, but the physical exam performed that day was normal. Plaintiff declined further Botox treatment, but the provider prescribed Doxipin,[7] referred Plaintiff to Dr. Patel for a sleep evaluation, and encouraged him to follow up with Dr. Abdul for possible nasal reconstructive surgery because of Plaintiff's history of a broken nose. (T. at 553.) Plaintiff never returned to Dr. Rasheed or any provider in his office for further treatment, and it does not appear that Plaintiff ever treated with Dr. Patel or Dr. Abdul as recommended. Dr. Rasheed then submitted a source statement dated May 14, 2013, indicating Plaintiff "would be off task 10% of the time." (T. at 581.) Notably, this form was submitted after the hearings where the Plaintiff and the vocational expert testified. (*See* T. at 33, 68.)

In assigning "no weight" to the opinion of Dr. Rasheed, the ALJ found that Dr. Rasheed's

---

[7]

Doxipin is generally used to treat depression and anxiety. *See* http://www.pdrhealth.com/drugs/doxepin (last visited Feb. 1, 2016).

opinion was not consistent with his own medical records and the Court agrees. Dr. Rasheed himself only treated the Plaintiff on two occasions and another provider at Dr. Rasheed's office treated him on one other occasion. As outlined above, neither Dr. Rasheed's conclusions as detailed in his treatment notes, nor the encounter note of the other provider in his office, show any objective or laboratory findings to support the opinion that Plaintiff would be off task.

    3.   <u>Other Opinion Evidence</u>

As the ALJ discussed, Dr. Rasheed's opinion was also inconsistent with the opinions of Drs. Burgess, Rapp, Noles, and Loomis. (T. at 23.) The report signed by E. J. Burgess, Psy.D., upon psychological testing completed by Ashly T. Weeks, M.A., noted that Plaintiff was of average intelligence, and he would "be able to sustain attention to perform simple repetitive tasks." (T. at 502-03.) Mitchell Rapp, Ph.D., found Plaintiff was "not significantly limited" in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (T. at 104.) Keith O. Noles, Ph.D., noted that Plaintiff had "the ability to perform simple routine tasks" and could "attend to important situational details." (T. at 130.) Dr. Noles further found that Plaintiff had the ability to "develop and follow an established routine of daily activities, and complete basic cognitive requirements of simple work in a low stress low demand environment." (T. at 130-31.) Cheryl Loomis, Ph.D., found Plaintiff "mildly impaired" regarding his attention and concentration, and "moderately limited" in being able to maintain attention and concentration, and regularly attend to a routine and maintain a schedule, but that he could work for "up to 40 hours with reasonable accommodation" such as a supportive, low stress environment. (T. at 585, 587-88.)

Based upon the above, the Court finds that the ALJ properly considered the regulatory

factors when assigning Dr. Rasheed's opinion no weight. Here, the ALJ considered the nature and extent of the treating relationship, and the consistency of the opinion with the other evidence of record. (*See* T. at 22-23.) The ALJ further noted that Dr. Rasheed's opinion that Plaintiff would be off task ten percent of the time was not supported by any rationale or treatment findings. *Id.* Under these circumstances, the ALJ correctly determined that Dr. Rasheed's opinion was not entitled to controlling weight. *Halloran*, 362 F.3d at 32. The ALJ gave "significant weight" to the opinions of Drs. Burgess, Rapp, Noles, and Loomis, which the Court finds appropriately explained by the ALJ and well supported in the examinations of the Plaintiff by Drs. Burgess and Loomis, and the records as a whole as outlined above. Therefore, the Court finds the ALJ correctly determined the Plaintiff's RFC by applying proper legal standards in assigning weight to the medical opinions and that the weight the ALJ assigned to those opinions is supported by substantial evidence.

### D. Step Five Determination

Plaintiff chiefly argues that vocational expert ("VE") David Festa's testimony did not establish there were a significant number of jobs available to Plaintiff in the national and regional economy and therefore the Commissioner did not sustain her burden at step five of the sequential analysis. (Dkt. No. 13 at 12.) The Defendant argues that the ALJ's step five determination was sufficiently supported by the VE's testimony. (Dkt. No. 14 at 12.) For the following reasons, the Court finds that ALJ did not err in his step five determination.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. *Balsamo v. Chater*, 142 F.3d 75,

80 (2d Cir. 1998) (quoting *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983)). *See also* 20 C.F.R. §§ 404.1560(c), 416.960(c). The ALJ may apply the grids or consult a VE. *See Heckler v. Campbell*, 461 U.S. 458, 462 (1983); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.

The VE may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6, 2004 U.S. Dist. LEXIS 5125, at *17-18 (N.D.N.Y. Mar. 22, 2004) (citations omitted). A VE's testimony is useful only if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1984) (citation omitted). The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions must present the full extent of the claimant's impairments to provide a sound basis for the VE's testimony. *Colon*, 2004 WL 1144059, at *6, 2004 U.S. Dist. LEXIS 5125, at *18-19 (citations omitted). However, there must be "'substantial record evidence to support the assumption upon which the [VE] based his opinion.'" *Colon*, 2004 WL 1144059, at *6, 2004 U.S. Dist. LEXIS 5125, at *19 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).

According to the Regulations, "[w]ork exists in the national economy where there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b) and 416.966(b) (2012). "Courts have generally held that what constitutes a 'significant' number is fairly minimal." *Fox v. Comm'r of Soc. Sec.*, Civ. No. 6:02-CV-1160,

2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009) (collecting cases).[8]

After opining that Plaintiff could not do any of his past relevant work with his current limitations, the ALJ testified that a hypothetical person with Plaintiff's vocational background and limitations matching the ALJ's RFC findings could perform the jobs of racker, routing clerk, and electrode cleaner. (T. at 86-87.) As previously determined herein, substantial evidence supports the findings that formed the basis of the hypothetical posed by the ALJ to the VE. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v Colvin*, 758 F.3d at 151 (citations and internal punctuation omitted).

Plaintiff contends that the VE's testimony was insufficient upon which to base a finding that a significant number of jobs exist in the national economy that Plaintiff could do because the VE failed to specify the exact number of positions for a racker, routing clerk, and electrode cleaner that exist in the national, state, and regional economy. (Dkt. No. 13 at 12-14.) The numbers to which the VE testified pertained to broad categories of jobs that included positions other than racker, routing clerk, and electrode cleaner. (T. at 89-91.) The VE could not say exactly how many racker, routing clerk, and electrode cleaner positions existed within the categories. *Id.* The VE also testified that the numbers to which he referred for each broad category of jobs included positions that Plaintiff would not be able to perform because of his limitation to routine work. *Id.* Under these circumstances, Plaintiff argues that the VE's

---

[8]

This is a citation to a Report-Recommendation (adopted in its entirety) that LEXIS does not include.

testimony was uncertain as to the number of jobs available to Plaintiff in the local or national economy and therefore does not constitute substantial evidence. *See Johnston v. Barnhart*, 378 F. Supp. 2d 274, 283 (W.D.N.Y. 2005) (ALJ erred where VE's testimony concerning numbers of jobs available pertained to broad category of jobs that included positions other than the two jobs claimant could perform within her limitations and VE could not say how many positions existed for those two jobs); *cf. Kennedy v. Astrue*, 343 F.App'x 719, 722 (2d Cir. 2009) ("[A]though the vocational expert acknowledged that the data on which she relied in determining the existence of 'charge-account clerk' positions . . . also encompassed approximately 59 other DOT titles, viewed in context, it is apparent that the expert arrived at her estimated figures for charge-account clerk positions by discounting from the total numbers for all 60 DOT titles. Thus, the expert's testimony on this point did not introduce any meaningful uncertainty as to the number of charge account clerk positions available in the local or national economy."). Here, however, the VE also specifically testified that based upon his experience as a vocational counselor and his job placement activities, the jobs of racker, routing clerk, and electrode cleaner exist in the upstate regional economy where Plaintiff resides because he placed individuals in very similar jobs in that area. (T. at 91-92.)

Defendant relies on *Brault v. Social Sec. Admin.*, 683 F.3d 443 (2d Cir. 2012) for the proposition that the ALJ does not need to find that a specific number of jobs exist, but rather that a significant number of jobs exist within a claimant's limitations. (Dkt. No. 14 at 15.) In *Brault*, the Court emphasized that the deferential substantial evidence standard is extremely flexible, and gives reviewing federal courts freedom to take a case-specific, comprehensive review of administrative proceedings, weighing all evidence to determine whether it is substantial. *Brault*,

683 F.3d at 449.  The VE in *Brault* relied on the *Occupational Employment Quarterly II*, which uses Standard Occupational Classification ("SOC") codes.  *Id.* at 446.  Here, the VE used the *Dictionary of Occupational Titles* ("DOT") to determine the classification of jobs within Plaintiff's vocational and functional abilities.  (*See* T. at 83.)  The *Brault* Court noted that the "DOT codes are much more granular than SOC codes" because "there were nearly 13,000 job titles in the 1991 edition of the DOT, but only about 1,000 SOC titles."  *Brault*, 683 F.3d at 446.  Nevertheless, the Court further noted that the ALJ did not need to find specific numbers of jobs; all he was required to do was find that "substantial" positions exist.  *Id.* at 450.

"Courts generally accept as substantial evidence imprecise vocational expert opinions formed consistent with the methodology used by their professional contemporaries and based upon sources, materials and data generally deemed reliable.  'Experience' may provide the necessary foundation for vocational experts' testimony, especially when the record reflects that they personally performed actual market surveys or placed substantial numbers of clients within the jobs they identified as matching claimants' residual functional capacities."  *Vandermark v. Colvin,* 3:13-cv-1467 (GLS/ESH), 2015 WL 1097391, at *16, 2015 U.S. Dist. LEXIS 30376, at *49 (N.D.N.Y. Mar. 11, 2015).

VE Festa had worked as a vocational counselor and consultant for over 40 years at the time of the hearing.  (T. at 91, 277-78.)  During that time, he personally placed individuals in jobs that he opined Plaintiff could perform with his RFC as determined by the ALJ.  (T. at 91-92.) His opinion regarding the availability of those jobs was formed in reliance on accepted statistical publications, as well as his experience.  As such, the Court finds that VE Festa's testimony could reasonably be accepted and therefore the Commissioner sustained her evidentiary burden at step

five of the sequential evaluation.

After carefully reviewing the entire record and for the reasons stated, the Commissioner's denial of benefits applied the correct legal standards and was based upon substantial evidence. Therefore, the Court recommends that the decision of the Commissioner be affirmed.

**WHEREFORE,** it is hereby

**RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**,  Defendant's motion for judgment on the pleadings (Dkt. No. 14) be **GRANTED**, and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: February 2, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge